**FILED**
**U.S. District Court**
**District of Kansas**
10/22/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KYLE JOSEPH SUTTON,**

**Plaintiff,**

**v.** **CASE NO. 26-3318-JWL**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY, KANSAS, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Kyle Joseph Sutton is hereby required to show good cause, in writing to the undersigned, why his claims in Counts II and III, his claim in Count I based on the failure to include "true and correct" in Detective Blackman's affidavit, and his claims against the Unified Government of Wyandotte County should not be dismissed for the reasons stated herein.

## I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. At the time of filing, Plaintiff was in custody at the Wyandotte County Adult Detention Center in Kansas City, Kansas. Plaintiff has since been released from custody. The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff claims that on April 9, 2026, Officers McMahan and Ledoux with the Kansas City, Kansas, Police Department ("KCKPD"), had contact with Samantha Howard, who advised the officers that Plaintiff was known to possess firearms. (Doc. 1, at 2, 4.) Plaintiff claims that he does not know Samantha Howard. *Id.* at 4. He claims that Officers McMahan and Ledoux then used Flock Safety Software to obtain Plaintiff's home mailing address, vehicle description, and tag number. *Id.* Plaintiff claims that Officers McMahan and Ledoux, along with Detective

Blackman, an ATF liaison, used hearsay information to conspire to stalk Plaintiff with Flock safety technology while they were staking out near Plaintiff's residence. *Id.*

Plaintiff claims that on April 11, 2026, the officers were notified by a Flock tag reader that Plaintiff was five minutes out from his residence. *Id.* When Plaintiff turned onto his street, the officers pulled him over for having a covering on his license plate. *Id.* Plaintiff claims that "under the pretext of cigarette ashes in the passenger seat" and a non-extraditable warrant out of Gladstone, Missouri, Officer McMahan forced Plaintiff out of his vehicle, did a Terry pat down, and discovered a firearm. *Id.* at 5. Plaintiff was then arrested for felon in possession. *Id.*

Plaintiff claims that the officers alleged that they called a K-9 unit, and under the pretext of spilled Tide laundry detergent in the back floorboard, towed Plaintiff's vehicle to the CSI impound lot to be searched. *Id.* Plaintiff claims that nothing was found except Tide laundry detergent. *Id.*

Plaintiff claims that on April 13, 2026, Detective Blackman filed his affidavit with the following misrepresentations: 1) that the incident was a random traffic stop; 2) without disclosing that the officers were on a stakeout waiting for Plaintiff or that he was being tracked by Flock tag readers prior to the arrest; 3) without disclosing the credibility of the source of information—Samantha Howard; 4) the false application of the city ordinance to support the stop when Plaintiff's tags were visible as required prior to the July 1, 2026, Senate Bill 403; 5) omitting that the active warrant in Gladstone, Missouri, was non-extraditable; and 6) misrepresenting the information about the "large amount of white powdery substance under the driver's seat," making it appear as drugs to support probable cause when Blackman knew it was Tide laundry detergent. *Id.* at 5–6. Plaintiff claims that Detective Blackmon's unsworn affidavit omitted the "true and correct" language mandated by K.S.A. 53-601 to circumvent penalty of perjury under K.S.A. 21-

5903(a)(2). *Id.* at 7. The affidavit led to Plaintiff's arraignment in Case No. WY-2026-CR-000387. *Id.*

Plaintiff filed a motion to suppress in his state criminal case. *See State v. Sutton*, Case No. WY-2026-CR-000387 (District Court of Wyandotte County, Kansas). Plaintiff claims that he was representing himself in the case and the clerk's office "was notified to start sabotaging his subpoenas." *Id.* at 8. Plaintiff claims that he knew to look for this because his subpoenas were sabotaged in an earlier case in 2019. *Id.* Plaintiff claims that the embossed seal was missing on the subpoenas. *Id.* Plaintiff also claims that Detective Blackman's subpoena "was missing" and in its place was a duplicate of Officer McMahan's. *Id.* Plaintiff claims that the clerk's office failed to send him a copy of Detective Blackman's file-stamped copy pursuant to his subpoena request. *Id.* He also claims that someone altered the delivery date on the subpoena from 2026 to 2027. *Id.* at 9. Plaintiff claims that Detective Blackmon did not show up for court for Plaintiff's suppression hearing, and the judge had to call him. *Id.* Plaintiff claims that he had to file a complaint on the clerk in his 2019 case. *Id.* at 10 (citing Case No. 2019-CR-001240). He claims that this shows an unofficial custom or practice is in place. *Id.*

Plaintiff claims that Defendant Patrick Grey filed the state's response to Plaintiff's motion to suppress, and made a false representation regarding the arrest in the response. *Id.* at 10. He omitted that the active warrant was non-extraditable. *Id.*

Plaintiff claims that after the judge ordered Detective Blackman to appear at the hearing, Blackman testified that the KCKPD had been knowingly omitting "true and correct" from all their affidavits for seven years. *Id.* at 11. Plaintiff alleges that this shows an unofficial custom or practice of submitting affidavits unsupported by oaths and affirmations. *Id.*

Plaintiff states that the state court judge granted his motion to suppress. *Id.* at 12. Plaintiff

claims that in granting the motion the judge stated that she could read Plaintiff's tag that Officer Ledoux testified was illegible. *Id*. at 12. Plaintiff claims that the judge stated that there was misconduct by the arresting officers. *Id*. Plaintiff claims that he was held in pretrial detention for five months. *Id*.

As Count I, Plaintiff alleges that his Fourth Amendment rights were violated when Officers McMahan and Ledoux, and Detective Blackman, conspired to abuse Flock tag reader technology to trap Plaintiff near his residence, used a false application of KCK city ordinance 35-926(d), and initiated an unlawful traffic stop and unlawful search. *Id*. at 14–15. Plaintiff also alleges that Detective Blackman lied in his affidavit and omitted the phrase "true and correct" to avoid perjury charges and therefore his affidavit is not supported by an "oath or affirmation." *Id*. at 14.

As Count II, Plaintiff alleges a Sixth Amendment violation by the Wyandotte County Court Clerk due to "tampering with subpoenas." *Id*. at 14. As Count III, Plaintiff alleges that his Fourth Amendment rights were violated by prosecutor Patrick Grey based on his response to the motion Plaintiff filed in his state court criminal case. *Id*. at 16.

Plaintiff names as defendants: the Unified Government of Wyandotte County, Kansas; Jakob Blackman, KCKPD Detective; Blake McMahan, KCKPD Police Officer; Garrett Ledoux, KCKPD Police Officer; (fnu) (lnu) Clerk, Wyandotte County Courthouse; and Patrick Grey, Assistant District Attorney, Wyandotte County. Plaintiff asserts that all Defendants are being sued in their individual capacities. *Id*. at 3. For relief, Plaintiff seeks $500,000 for mental and emotional distress, $250,000 for the time he was in pretrial detention, and $1,000,000 in punitive damages. *Id*. at 18.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a

complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Count I – Failure to Use "True and Correct" in Affidavit

Plaintiff alleges in Count I that Detective Blackman lied in his affidavit and omitted the phrase "true and correct" to avoid perjury charges and therefore his affidavit is not supported by an "oath or affirmation." Plaintiff claims that Detective Blackman's affidavit does not comply

with K.S.A. 53-601.[1] Plaintiff attaches the affidavit to his Complaint. *See* Doc. 1–2, at 1–2. Detective Blackman's Affidavit for Application for Warrant provides at the beginning that "Affiant, being duly sworn on oath, says that he has reason to believe as follows" and then above Detective Blackman's signature at the end it states "I verify the foregoing, under penalty of perjury, this 13 day of April 2026." *Id.* at 2. Detective Blackman then signs the affidavit as the "Affiant." *Id.*

The statute cited by Plaintiff provides that unsworn declarations have the same force and effect as a sworn declaration when the unsworn written declaration, verification, certificate, or statement is:

> dated and subscribed by the person as true, under penalty of perjury, *in substantially the following form*:
> . . . .
>> (2) if executed in this state: "I declare (or verify, certify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). __________ (Signature)."

K.S.A. 53-601(a)(2) (emphasis added). Kansas courts dealing with similar attacks have found that the issue was whether the affidavit or declaration "substantially complied with K.S.A. 53-601(a)(1)." *State v. Kemp*, 65 Kan. App. 2d 425, 431 (2025). "Practically speaking, because the declaration must only be in 'substantially' the same form as is provided [in the statute], a declaration need not strictly comply with the language provided by K.S.A. 53-601(a)." *Id.* at 434.

The Kansas Court of Appeals in *Kemp* held that:

> To determine whether this certification is in substantial compliance with the statute, the court must analyze the spirit, intent, and reasonable objectives of K.S.A. 53-601(a).
>
> Generally, K.S.A. 53-601 allows a statement subscribed by

[1] Plaintiff has previously raised the issue regarding the lack of "true and correct" on affidavits submitted by employees of the Unified Government of Wyandotte County, Kansas. *See Sutton v. State*, Case No. WY-2023-CV-000503 (District Court of Wyandotte County, Kansas). Plaintiff initiated that case on July 17, 2023, alleging that the issue has been going on since 2019. *Id.* Plaintiff claimed that the lack of "true and correct" on the affidavits violates K.S.A. 53-601. *Id.* That case was dismissed on August 23, 2024, for failure to prosecute. *Id.*

> the person as true under the penalty of perjury to have the same force and effect as a sworn written declaration, verification, certificate, statement, oath, or affidavit. In determining the "spirit and intent" of K.S.A. 53-601(a)(1), the legislative history is helpful. When this statute was originally proposed as 1989 House Bill 2436, it was more limited and intended only to remove notary requirements for corporations executing annual reports, for persons assisting disabled voters, and for persons applying to become lobbyists. But the Kansas Bar Association requested the Legislature broaden the application of the bill and adopt the language in 28 U.S.C. § 1746. The KBA testified that "HB 2436 is such a good idea it should be expanded." Kansas Bar Association Testimony before House Judiciary Committee, HB 2436, Att. X, p.1 (February 28, 1989). The bill was then broadened, and K.S.A. 53-601 was passed into law, effective July 1, 1989, in substantially its current form. The Legislature thus followed the KBA's advice and codified K.S.A. 53-601 with very similar wording to that in 28 U.S.C. § 1746. The intent for both 28 U.S.C. § 1746 and K.S.A. 53-601 was to broadly reduce the requirement of using a notary public in lieu of a declaration under penalty of perjury.
>
> This court has previously held that the Legislature's intent in enacting K.S.A. 53-601 was to codify the principle set forth in *State v. Kemp*, 137 Kan. 290, 20 P.2d 499 (1933). *Double S, Inc. v. Northwest Kansas Production Credit Ass'n*, 17 Kan. App. 2d 740, 744, 843 P.2d 741 (1992). *Kemp* held that a verified affidavit (through a notary public) had the same legal effect as if defendant was sworn according to the formalities prescribed for administration of an oath—despite lacking certain statutory requirements. 137 Kan. at 293, 20 P.2d 499. Consistent with the rationale of the *Kemp* opinion, under K.S.A. 53-601, if a declarant understands the statement is true and understands they are under oath, the statement is valid despite the absence of the statutory formalities. *Double S, Inc.*, 17 Kan. App. 2d at 745, 843 P.2d 741. This purpose of the statute is at the heart of the substantial-compliance question in this case.

*Id*. at 434–35. "Just as with 28 U.S.C. § 1746, the spirit and intent of K.S.A. 53-601 is to allow flexibility for receiving sworn testimony." *Id*. at 435. The original object of the statute is "to allow for flexibility over form when receiving sworn statements in lieu of live testimony in Kansas courts." *Id*. at 438.

Plaintiff has failed to state a claim for relief based on the lack of "true and correct" in

Detective Blackman's affidavit. Plaintiff should show good cause why this claim should not be dismissed for failure to state a claim.

**B. Cout I – Fourth Amendment**

The remainder of Plaintiff's claims in Count I allege a Fourth Amendment violation. Plaintiff alleges that his Fourth Amendment rights were violated when Officers McMahan and Ledoux, and Detective Blackman, conspired to abuse Flock tag reader technology to trap Plaintiff near his residence, used a false application of KCK city ordinance 35-926(d), and initiated an unlawful traffic stop and unlawful search. Plaintiff's claims relate to his state court criminal proceedings. *See State v. Sutton*, Case No. WY-2026-CR-000387 (District Court of Wyandotte County, Kansas). Plaintiff alleges that his stop and arrest were unlawful. Plaintiff filed a motion to suppress in the case that was granted. *Id*. Plaintiff's criminal case was dismissed on August 17, 2026, due to "prosecutorial discretion and the Court's ruling re suppression." *Id*. The judge advised Plaintiff that the State chose not to appeal her decision.

Plaintiff's Fourth Amendment claim in Count I is not subject to dismissal at this time. Plaintiff does not need to address his Fourth Amendment claim in his response to this Memorandum and Order to Show Cause.

**C. Count II – Sixth Amendment**

Plaintiff alleges as Count II that his Sixth Amendment rights were violated by the Wyandotte County Court Clerk due to "tampering with subpoenas." Plaintiff does not explain how this constitutes a Sixth Amendment violation. The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining

> witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend VI.

Plaintiff has failed to allege that he was unable to be confronted with witnesses against him or to have compulsory process of obtaining witnesses in his favor. Although Plaintiff claims that Detective Blackman's subpoena was missing from the copies Plaintiff received back, he acknowledges that the subpoena was issued and Detective Blackman appeared and testified at the suppression hearing. Plaintiff acknowledges that the clerk filed his subpoenas, and seems to take issues with the copies he received back. *See* Doc. 1, at 8. He claims that the copies he received back did not have the embossed court clerk stamp, and one subpoena used 2027 as the date of the hearing. *Id.* He also claims that he did not receive a copy of Detective Blackman's subpoena and instead received two copies of Officer McMahan's subpoena. *Id.*

Plaintiff has failed to allege how he was injured by the clerk or how the Sixth Amendment was violated based on these alleged clerical errors. The docket in Plaintiff's state court criminal case shows that subpoenas were issued, Detective Blackman appeared at the suppression hearing and testified, and Plaintiff was successful on his motion to suppress. Plaintiff should show good cause why his Sixth Amendment claim in Count II should not be dismissed for failure to state a claim.

**D. Count III – Fourth Amendment**

As Count III, Plaintiff alleges that his Fourth Amendment rights were violated by prosecutor Patrick Grey based on his response to Plaintiff's motion to suppress. (Doc. 1, at 16.) Plaintiff references his attached Exhibits G and H. *Id.* Exhibit G is the State's Response to Defendant's Pro Se Motion to Suppress Affidavit. (Doc. 1–7, at 1–4.) Exhibit H is Plaintiff's

Motion to Strike the response, arguing that Mr. Grey's statement of facts are immaterial. (Doc. 1–8, at 1–3.)

"[C]ounty district attorneys work for the state, not the county." *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016) (citing K.S.A. § 22a-101(a)[2] (stating the district attorney is the "executive officer of the judicial district in which he is elected" and "in no event shall said district attorney be deemed an officer of any county"); *Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1347 (D. Kan.1994) (holding that "county district attorneys are officers of the state," to which the Eleventh Amendment gives them immunity from suit, unlike county officers)).

In addition, prosecutors are absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The Supreme Court has held that prosecutors enjoy absolute immunity "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Neighbors v. Lawrence Police Dep't.*, 2016 WL 3685355, at *9 (D. Kan. July 12, 2016) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976)). "This prosecutorial immunity is limited, however, to actions that 'involve the prosecutor's role as advocate . . . rather than his [or her] role as administrator or investigative officer . . ..' " *Id.* (quoting *Imbler*, 424 U.S. at 491 (citation and internal quotation marks omitted)).

---

[2] The statute establishes the office of district attorney for the state's judicial districts 3, 10, 18 and 29, and abolishes the office of county attorney for those judicial districts. K.S.A. § 22a-101(a) and (b). Those judicial districts are for the following counties: 3rd Judicial District – Shawnee; 10th Judicial District – Johnson; 18th Judicial District – Sedgwick; and 29th Judicial District – Wyandotte. *See* https://kscourts.gov/About-the-Courts/District-Courts (last visited Oct. 22, 2026).

Clearly, the prosecutor was presenting the State's case when he filed a response to Plaintiff's motion to suppress. He was taking actions involving his role as advocate. Plaintiff should show good cause why his claims in Count II against the prosecutor should not be dismissed.

**E. Unified Government of Wyandotte County**

Plaintiff names the Unified Government of Wyandotte County as a defendant.[3] "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978); *see also id*. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id*. (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id*. at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

Plaintiff alleges that his claims based on the clerk's handling of his subpoenas and the omission of "true and correct" on affidavits are based on an unofficial custom or practice. However, these claims are subject to dismissal. Therefore, Plaintiff should show good cause why his claims against the Unified Government of Wyandotte County should not be dismissed.

---

[3] The governments of Wyandotte County and Kansas City, Kansas, were consolidated to form the Unified Government of Wyandotte County and Kansas City, Kansas ("UG"). The KCKPD operates as part of the UG and directly reports to the County Administrator. *See* https://www.kckpd.org/Department/History (last visited Oct. 22, 2026).

**III. Response Required**

Plaintiff is required to show good cause why his claims in Counts II and III, his claim in Count I based on the failure to include "true and correct" in Detective Blackman's affidavit, and his claims against the Unified Government of Wyandotte County should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of these claims without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 23, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims in Counts II and III, his claim in Count I based on the failure to include "true and correct" in Detective Blackman's affidavit, and his claims against the Unified Government of Wyandotte County should not be dismissed for the reasons stated in this Memorandum and Order to Show Cause.

**IT IS FURTHER ORDERED** that the Clerk is directed to redact the date of birth on Doc. 1, at 2.

**IT IS SO ORDERED**.

**Dated October 22, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**